UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cr-00001-TWP-TAB |
| ) | |
| DUPRECE JETT (01), ) | |
| DAMION MCKISSICK (02), ) | |
| EARL WALKER (03), ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Damion McKissick's ("McKissick") Motion to suppress evidence seized as the result of a warrantless search of McKissick's person. ([Filing No. 90 at 4-5](#).) McKissick is charged with one count of conspiracy to affect commerce by robbery in violation of 18 U.S.C. § 1951(a), and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a). He seeks to suppress evidence obtained from the warrantless search of his person during a traffic stop. McKissick asserts the search and seizure violated his Fourth Amendment rights, justifying suppression of the evidence. For the following reasons, McKissick's motion is **GRANTED**.

**I. FINDINGS OF FACT**

Neither party requested a hearing on the motion to suppress. "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). Although McKissick disputed issues of material fact with respect to facts presented in the Government's initial briefing and affidavits, a dashboard camera ("dash

cam") video of the traffic stop, search and seizure exists and was filed on January 23, 2017. (Filing No. 122). The Court was able to resolve any factual disputes after viewing the video.

On November 20, 2015, Officer Robert Hollo ("Officer Hollo") of the Fort Wayne Indiana Police Department was on patrol when he observed a 2005 Dodge Durango traveling at 60 miles per hour in a 35 mile per hour zone. Officer Hollo pulls over the Dodge Durango and initiates a traffic stop. (Filing No. 122 at 1:00.) Officer Hollo approaches the vehicle and tells the driver, that he has him clocked on radar going 60 miles per hour in a 35 mile per hour zone. (Filing No. 122 at 1:20.) Officer Hollo checks the driver's identification and determines the driver is Damion McKissick. The front seat passenger is identified as Keon Brooks. (Filing No. 110-1). Officer Hollo instructs McKissick to step out of the vehicle because the vehicle smells "like weed," and because McKissick indicated that the vehicle was just purchased earlier in the day and is uninsured. (Filing No. 122 at 2:30.) Officer Hollo instructs McKissick to step to the sidewalk so that he can conduct a pat-down "for [officer] safety." (Filing No. 122 at 2:51.) Officer Hollo conducts a pat-down and recovered no items from McKissick's person during the search for officer safety. (Filing No. 122 at 2:58.)

After a brief discussion with McKissick and the Durango's passenger, Officer Hollo enters his police vehicle. (Filing No. 122 at 4:58.) The sounds of typing are evident, after which Officer Hollo exits his police vehicle and privately informs the accompanying officer that "Damion McKissick is FBI's bank robber who is doing them in Indy right now." (Filing No. 122 at 5:15.) Officer Hollo then steps back into his vehicle and attempts to reach an FBI contact via the radio. (Filing No. 122 at 5:36-7:58.) Officer Hollo eventually reaches FBI Task Force Officer Darrin Strayer ("TFO Strayer") on his cellphone. (Filing No. 122 at 7:58.) Officer Hollo informs TFO Strayer that McKissick is driving a vehicle that his wife purchased that day. (Filing No. 122 at

8:25.) Officer Hollo states that he has not yet searched the car, but that he has "every right to do so." (Filing No. 122 at 8:28.) The accompanying officer then begins conducting a search of the vehicle. (Filing No. 122 at 10:05.) At the commencement of the search, Officer Hollo says quietly to the accompanying officer "…looking for U.S. currency." (Filing No. 122 at 10:26.)

A voice emerges on the radio asking for Officer Hollo, and instructing him to search the vehicle if they have the right to, because that person "want[s] to know how much cash they have." (Filing No. 122 at 11:15.) Officer Hollo indicates that nothing had been found inside the vehicle, but he "needs to go through [McKissick's] pockets, though." (Filing No. 122 at 11:37.) Officer Hollo then steps out of the vehicle and informs McKissick off-camera that he needs to search his pockets, saying that he smells "weed." (Filing No. 122 at 12:32.) Officer Hollo then states, "where'd you get all this cash, big man?" (Filing No. 122 at 12:37.)

Officer Hollo then returns to his vehicle and contacts TFO Strayer on the radio. (Filing No. 122 at 12:56.) Officer Hollo informs "Stray" that a large quantity of cash was recovered from McKissick's pockets, in denominations of $50.00 and $100.00. (Filing No. 122 at 13:05.) TFO Strayer instructs Officer Hollo to seize the money and "put a hold for FBI." (Filing No. 122 at 13:05.) Officer Hollo then asks, "Do you want him arrested? I'm going to have trouble explaining why I'm taking his money if I'm not arresting him." (Filing No. 122 at 13:30.) TFO Strayer asks how much money was found, to which Officer Hollo replies "a couple thousand." (Filing 122 at 13:35.) TFO Strayer then instructs Officer Hollo to "go ahead and take it," and to ask McKissick "if he is working anywhere." (Filing No. 122 at 13:35.) The accompanying officer then asks McKissick whether he is employed, to which McKissick responds with the name of his employer. (Filing No. 122 at 14:15.) Officer Hollo then comments that the bills recovered from McKissick appear to be brand new and are sticking together. (Filing No. 122 at 14:20.) TFO Strayer responds

3

to Officer Hollo "if you need to arrest him to seize the money," to "go ahead." (Filing No. 122 at 14:49.) Officer Hollo first explains that he will arrest McKissick for being an unlicensed driver, but then decides to write him a ticket and release him instead. (Filing No. 122 at 14:50-16:58.) Officer Hollo counts out 50 twenty dollar bills, 60 fifty dollar bills and two one hundred dollar bills in McKissick's presence. Officer Hollo states to McKissick that they are fresh, crisp, dollar bills. He also tells McKissick "this is an arrest technically," but he is only giving him a ticket because he would be "OR'ed." Officer Hollo tells McKissick that he is not seizing the money, but that it would be "held for gang" until McKissick comes to claim it "with receipts." (Filing No. 122 at 19:10.) Thereafter, McKissick is released.

On September 20, 2016, the Government filed a Notice of Intent to Use Evidence under Federal Rule of Evidence 404 ([Filing No. 79](#)), including $4,200.00 in U.S. currency seized from McKissick's person during the November 20, 2015 traffic stop. *Id*. McKissick filed an Objection to the Government's Rule 404 Notice, in which he raises this suppression motion. ([Filing No. 90](#) at 4-5.) On January 17, 2017, the Government filed a Response in Opposition to Defendant's Motion to Suppress and attached affidavits from three of the officers and agents involved in the traffic stop, as well as the Sheriff Deputy's Report of the incident. ([Filing No. 110](#).) On January 23, 2017, the day that McKissick's reply was due, the Government disclosed to McKissick a recently discovered dash cam video taken from the police vehicle of the officer that conducted the traffic stop. ([Filing No. 113](#).) On January 25, 2017 the Government filed a second Response in Opposition to Defendant's Motion to Suppress (Filing No. 120). McKissick filed an Amended Reply on January 25, 2017. ([Filing No. 123](#).)

## II. DISCUSSION

McKissick does not challenge his initial stop. He argues, however, that the warrantless search of his person violated the Fourth Amendment to the United States Constitution, and therefore that the evidence seized by the officers must be suppressed.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Am. IV. The Supreme Court has held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001).

McKissick does not dispute the validity of the first pat down of his person for officer safety. At issue is the second warrantless search and seizure. The Government does not assert the exception of search incident to an arrest, instead they argue that two exceptions apply here: (1) the automobile exception; and (2) the exigent circumstances exception.

Under the automobile exception, if there is probable cause to believe that a lawfully stopped vehicle contains evidence of criminal activity, police may search every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982). Without citing any binding or persuasive precedent, the Government asserts that the automobile exception extends to cover not just the automobile and its contents, but also its occupants. ([Filing No. 120 at 7-9](#).) The Government cites two cases in support of this proposition:

one from an Illinois state appellate court, *People v. Williams,* 990 N.E.2d. 916 (Ill. App. 2013), and one from the Supreme Court of Kansas, *State v. Fewell*, 184 P.3d 903 (Kan. 2008).

Those cases reflect that the Supreme Court of Kansas and Illinois Court of Appeals have concluded that law enforcement may search the driver and/or passenger of a lawfully stopped vehicle if they have probable cause to believe that those persons hold evidence of a crime. *See Williams*, 990 N.E.2d at 922; *Fewell,* 184 P.3d at 913. The Government has cited no case suggesting that any federal court has similarly extended the Supreme Court's search and seizure jurisprudence, and the Court has located no such authority. The Court reiterates that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few *specifically established and well-delineated exceptions*." *Katz*, 389 U.S. at 357 (emphasis added). While the Government asks this Court to create such an exception, based on the opinions of two state courts, the Court declines to do so.

Second, the Government argues in one sentence and without any citation that the exigent circumstances exception to the warrant requirement applies here. One well-established exception to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Missouri v. McNeely,* 133 S. Ct. 1552, 1554 (2013) (citing *Kentucky v. King,* 563 U.S. 452 (2011)) (internal quotations omitted). Courts look to the totality of the circumstances to determine whether an exigency exists. *McNeely,* 133 S. Ct. at 1554.

The Government contends that because McKissick bought a car using cash on the morning of the traffic stop, his demonstration of an "inclination to spend" money necessitated the warrantless search. ([Filing No. 120 at 10](#).) The Supreme Court has identified several

circumstances as qualifying as "exigent" enough to justify a warrantless search: officers may enter a home to render emergency aid to an injured occupant or to protect an occupant from immediate injury; officers may enter a home when in hot pursuit of a fleeing suspect; and police may search a home to prevent the imminent destruction of evidence. *King,* 563 U.S. 452, 460. The court declined to adopt a *per se* rule, however, allowing the warrantless collection of blood samples from subjects suspected of driving under the influence, despite the evanescent character of that evidence. *McNeely,* 133 S. Ct. at 1563.

Here, the Government does not contend that the evidence was at risk of being destroyed. Rather, the Government contends that McKissick was likely to "spend" any money he might have been carrying—*i.e.*, cause it to change hands. No destruction was threatened or imminent, and if law enforcement was concerned about McKissick's spending habits, it could have placed him under surveillance (as it had been doing) for the short time it would have taken to secure a warrant. This fact, among others, differentiates this from a case in which officers fear the destruction of evidence. This Government has not established that its search was necessitated by exigent circumstances.

Finally, the Government argues that based on the totality of the circumstances, the officers had probable cause to search McKissick's person under the "collective knowledge doctrine," which allows an officer to act if he is reasonably relying on information from another officer. *United States v. Nicksion*, 628 F.3d 368, 376 (7th Cir. 2010); *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992). The collective knowledge doctrine provides a method by which to establish that probable cause for a search exists, when probable cause is the threshold requirement for a search. *See United States v. Harris,* 585 F.3d 394, 400 (7th Cir. 2009). But, as described above, without precedent or any legal authority, this Court declines to fashion the rule that probable

7

cause alone justifies the warrantless search of a vehicle's driver or passenger.[1] So even if the collective knowledge doctrine provided Officer Hollo with probable cause to believe McKissick's person carried evidence of a crime, that determination alone would not have justified the search. Because the Government has not established that an exception to the warrant requirement applies, the collective knowledge doctrine is inapplicable here.

### III. CONCLUSION

If a search is conducted without a warrant, the Government bears the burden to prove that an exception to the warrant requirement existed at the time of the search, or it will be deemed unreasonable and unconstitutional. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001). For the reasons set forth above, the Court determines that the Government has not met its burden and **GRANTS** McKissick's Motion to Suppress ([Filing No. 90 at 4-5](Filing No. 90 at 4-5)).

**SO ORDERED.**

Date: 2/1/2017

*[signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[1] In its January 25, 2017 response brief, the Government contends "in the time allowed the Government could not find a federal case dealing with a search absent an arrest." ([Filing No. 120 at 9](Filing No. 120 at 9).) To date, the Government has not submitted or requested leave to file any supplemental authority, which the court would welcome.

DISTRIBUTION:

Kimberly Shawntee Robinson
atty.robinson@icloud.com

Jack Crawford
CRAWFORD & DEVANE
crawdevlaw@indy.rr.com

Gwendolyn M. Beitz
INDIANA FEDERAL COMMUNITY DEFENDERS
gwendolyn_beitz@fd.org


Joseph Martin Cleary
INDIANA FEDERAL COMMUNITY DEFENDERS
joe_cleary@fd.org

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE
brad.shepard@usdoj.gov

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov